**Affirmed and Memorandum Opinion filed August 16, 2018.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-17-00322-CV

---

### KISHWAR KUMAR SHARMA AND PADMA SHARMA, Appellants

### V.

### KASHIF KHAN, ABDUL MAJEED SAMMA, MURTAZA SAMMA, ACGI GROUP, INC., ANANTASAI, LLC, REFORM HEALTHCARE MANAGEMENT LTD., SHAYAN & HIBA GROUP LTD., AND SAMMA UNIVERSAL GROUP INC., Appellees

---

**On Appeal from the 400th District Court**
**Fort Bend County, Texas**
**Trial Court Cause No. 14-DCV-214129-A**

---

## M E M O R A N D U M    O P I N I O N

Kishwar Kumar and Padma Sharma appeal the trial court's award of attorney's fees in connection with their suit for breach of a settlement agreement. The Sharmas contend that the trial court erroneously awarded them $38,250 in attorney's fees instead of the $520,000 they requested. We affirm.

BACKGROUND

The Sharmas sued appellees, Kashif Khan, Abdul Majeed Samma, Murtaza Samma, ACGI Group, Inc., Reform Healthcare Management Ltd., Shayan & Hiba Group Ltd., and Samma Universal Group, Inc., in 2014.[1] The Sharmas alleged that they came to Texas in 2012 and invested $1,115,000 in Khan's business, Advance Consulting Group, because Khan told them they could obtain citizenship after investing at least $1,000,000 in an American company that employed at least five Americans. The Sharmas alleged that Khan forged documents regarding their visa application and immigration status, requiring them to hire counsel to assist them with their immigration case. The Sharmas also alleged that Khan fraudulently transferred their investment to several entities and refused to provide an accounting of their investment. In their suit against appellees, the Sharmas asserted claims including fraud, breach of contract, breach of fiduciary duty, and unjust enrichment.

The Sharmas and appellees entered into a mediated settlement agreement in February 2016, under which appellees agreed to pay the Sharmas $1,200,000 by March 10, 2016, or $1,300,000 by May 10, 2016.[2] When appellees failed to make the agreed payment, the Sharmas filed a supplemental petition on May 26, 2016, alleging that appellees breached the settlement agreement and requesting attorney's fees for the breach.

The Sharmas filed a motion for partial summary judgment on June 6, 2016, arguing that appellees breached the settlement agreement as a matter of law, entitling the Sharmas to $1,300,000 in damages and $520,000 in attorney's fees. The

---

[1] The Sharmas also sued Anantasai, LLC at the time. This entity filed for bankruptcy in December 2015. The Sharmas did not sue Anantasai, LLC for breach of the settlement agreement in 2016, and it is not a party to this appeal.

[2] The settlement agreement is signed by the Sharmas's counsel and appellees' counsel; it is not signed by counsel for the bankruptcy trustee for Anantasai, LLC.

2

Sharmas attached to their summary judgment motion (1) a declaration from their trial counsel, Ashish Mahendru, in which he opined that $520,000 represents reasonable and necessary attorney's fees for prosecuting the breach of settlement agreement — an amount "equal to the amount of 40% contingency fee that [the Sharmas] are obliged to pay to [his firm];" and (2) invoices for work performed in the case by different professionals, including Mahendru.

Appellees filed a summary judgment response on July 11, 2016, arguing that the Sharmas failed to prove as a matter of law that they are entitled to $520,000 in attorney's fees. The trial court granted the motion for partial summary judgment on the claim for breach of the settlement agreement and awarded $1,300,000 in damages on July 22, 2016; the trial court did not award the Sharmas attorney's fees in its summary judgment order.

The trial court held a bench trial on the attorney's fees claim on November 18, 2016. Mahendru testified that attorney's fees in the amount of $520,000, an amount equal to the contingency fee, are reasonable and necessary according to the eight factors set out in *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997). Mahendru testified that a 40 percent contingency fee is reasonable and customary in a case like this one. He did not offer any billing records into evidence, although he testified that he worked 40-60 hours on the claim for breach of the settlement agreement; another attorney in the firm, Darren Braun, worked 20-30 hours on the claim; and paralegals worked 30-40 hours. Mahendru testified that his hourly rate ranges from $450 to $600 and the hourly rate for paralegals is $175; there was no testimony regarding attorney Braun's hourly rate.

Appellees' trial counsel, Robin Ziek, testified that $520,000 is not a reasonable amount for attorney's fees because Mahendru testified that he spent 40 to 60 hours working on the claim for breach of the settlement agreement. Ziek

3

opined that the hours Mahendru claimed to have worked were too high. Ziek testified that even multiplying 60 hours at an hourly rate of $600 would equate to no more than $36,000 in attorney's fees. Ziek reviewed the invoices attached to the Sharmas's partial summary judgment motion and testified that these invoices showed the work performed by Mahendru and other professionals at his firm amounted to approximately 10 hours.

The trial court instructed Mahendru as follows: "[w]hat I'll need from you is a proposed order including amounts of all the hours spent since May 9th forward, with all the people that were involved in this work, and as an officer of the court I'll take your word that you spent those hours and those amounts are reasonable. And you did give a range in your testimony, and I'm awarding you at the high end of the range that you billed for all three of you or any other people at your firm." The trial court stated that it would use the time billed by Mahendru's firm "as a guideline to figure out what is reasonable for the time . . . spent;" the trial court acknowledged that the amount of time spent is "one factor." Mahendru argued that considering only the time spent on the case "doesn't account for any risk that we took in the case," but the trial court responded, "[t]hat is just one factor, as you stated, but the underlying — the overlying thing is it has to be reasonable."

The trial court signed an order on December 14, 2016, awarding the Sharmas $38,250 in attorney's fees. On January 30, 2017, the trial court signed a final judgment awarding the Sharmas $1,300,000 in damages on their claim for breach of the settlement agreement and $38,250 in attorney's fees. The Sharmas filed a timely appeal.

## ANALYSIS

The Sharmas contend that the trial court's fee award is erroneous because (1) their counsel provided overwhelming and uncontroverted testimony that attorney's

4

fees of $520,000 were reasonable and necessary due to the specific circumstances of the case; (2) appellees offered no competent evidence that $520,000 was an unreasonable and unnecessary fee, or that a "different, lower amount of attorney's fees was reasonable and necessary;" and (3) the trial court "expressly ignored *Arthur Andersen* and substituted its own view of what is a reasonable fee."

## I.      Standard of Review and Applicable Law

A party prevailing on a breach of contract claim is entitled to recover reasonable attorney's fees. *See* Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8) (Vernon 2015). The party seeking attorney's fees bears the burden of establishing the fees are reasonable and necessary. *In re Nat'l Lloyds Ins. Co.*, 532 S.W.3d 794, 809 (Tex. 2017) (orig. proceeding).

Attorney's fees awards are reviewed for an abuse of discretion. *Dernick Res., Inc. v. Wilstein*, 471 S.W.3d 468, 490 (Tex. App.—Houston [1st Dist.] 2015, pet. denied); *Hartis v. Century Furniture Indus., Inc.*, 230 S.W.3d 723, 737 (Tex. App.—Houston [14th Dist.] 2007, no pet.). When reviewing a trial court's decision under this standard, we view the evidence in the light most favorable to the trial court's ruling and indulge every presumption in its favor. *Cleveland v. Taylor*, 397 S.W.3d 683, 701 (Tex. App.—Houston [1st Dist.] 2012, pet. denied).

An attorney's fees award must be supported by evidence that the fees are reasonable and necessary. *Wilstein*, 471 S.W.3d at 490. "The reasonableness of attorney's fees is ordinarily left to the factfinder." *Smith v. Patrick W.Y. Tam Trust*, 296 S.W.3d 545, 547 (Tex. 2009). A trial court determines the reasonableness of an attorney's fees award by considering eight nonexclusive factors enumerated in *Arthur Andersen*, 945 S.W.2d at 818. *In re Nat'l Lloyds Ins. Co.*, 532 S.W.3d at 809; *Wilstein*, 471 S.W.3d at 490; *see also Smith*, 296 S.W.3d at 548 ("We have held

5

that the *Arthur Andersen* factors apply to fee awards made by trial courts, not just juries.").

The factors are (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered. *Arthur Andersen*, 945 S.W.2d at 818 (citing Tex. Disciplinary Rules Prof'l Conduct 1.04(b), *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G, app. A).

A plaintiff may not shift an "entire contingent fee to the defendant without consideration of the factors required by the Rules of Professional Conduct." *See id.* The supreme court explained that, while a contingency fee contract may be reasonable in the view of the contracting parties, such an agreement is not necessarily "reasonable for the purposes of shifting the fee to the defendant." *Id.* "A reasonable fee is one that is not excessive or extreme, but rather moderate or fair." *Garcia v. Gomez*, 319 S.W.3d 638, 642 (Tex. 2010). A contingent fee agreement should be considered by the factfinder, but the factfinder "must decide the question of attorney's fees specifically in light of the work performed in the very case for which the fee is sought." *Arthur Andersen*, 945 S.W.2d at 819.

Further, a trial court need not receive evidence on each *Arthur Andersen* factor. *Barry v. Jackson*, No. 03-11-00549-CV, 2013 WL 6464966, *1 (Tex. App.—

Austin Nov. 26, 2013, no pet.) (mem. op.); *see Ainsworth v. CACH, LLC*, No. 14-11-00502-CV, 2012 WL 1205525, at *8 (Tex. App.—Houston [14th Dist.] Apr. 10, 2012, pet. denied) (mem. op.). A trial court is entitled to examine the "entire record and 'to view the matter in light of the amount in controversy, the nature of the case, and his or her personal experience as a lawyer and judge.'" *Land v. Land*, No. 14-17-00013-CV, 2018 WL 3468923, at *10 (Tex. App.—Houston [14th Dist.] July 19, 2018, no pet. h.) (quoting *Cole Chem. & Distrib., Inc. v. Gowing*, 228 S.W.3d 684, 689-90 (Tex. App.—Houston [14th Dist.] 2005, no pet.)).

## II.    Attorney's Fees

### A.    Uncontroverted Evidence

We begin by addressing the contention that the Sharmas are entitled to a $520,000 attorney's fees award because their "counsel provided overwhelming and uncontroverted testimony that attorney's fees of $520,000—an amount equal to the contingency fee that the Sharmas are required to pay to their counsel—were reasonable and necessary due to the specific circumstances of the case." The Sharmas contend that their counsel Mahendru "testified that $520,000 was a reasonable and necessary fee under the *Arthur Andersen* factors" because of the unique circumstances of the case.

The Sharmas argue they "adduced uncontroverted testimony" from Mahendru that (1) the risk of not collecting on their claim for breach of the settlement agreement was "extremely high;" (2) Mahendru's law firm could take the case only on contingency because the Sharmas had no money to pay attorney's fees; (3) Mahendru worked under significant time constraints; (4) the "seemingly simple nature" of the breach of settlement agreement claim required significant time and labor and the hiring of a bankruptcy attorney; (5) Mahendru's "firm may have been precluded from accepting other employment due to the time commitments associated

7

with accepting a case pending in Fort Bend County District Court, which is a two-hour round trip drive from his office, and which, unfortunately, usually requires a full day for a single hearing;" (6) a 40 percent contingency fee is customary in Harris and Fort Bend County; (7) "the 'amount involved' in the litigation was high;" and (8) the Mahendru law firm is known for its exceptional reputation and ability in Harris and Fort Bend County.

Mahendru testified regarding each *Arthur Andersen* factor. But, contrary to the assertion on appeal, Mahendru's testimony was not uncontroverted and overwhelming; and appellees' counsel and attorney's fees expert, Ziek, "controverted or disputed" Mahendru's testimony.

The Sharmas contend on appeal that "there is virtually no hope that the Sharmas will recover any portion of the $1.3 million" damages award for their breach of settlement claim. Assuming without deciding that the Sharmas's argument relates to the eighth *Arthur Andersen* factor, this argument is not supported by uncontroverted evidence. Mahendru testified that, because Anantasai, LLC, a company associated with appellee Khan, filed for bankruptcy, "there is no hope that is foreseeable that the Sharmas will ever get their money out of the clutches of this man. And he has made every excuse in the book as to why he can't pay." The Sharmas also point to the following cross-examination testimony from Ziek:

Q. Ms. Ziek, what's the collection risk in this case?

A. At this point in time, we don't — we can't assess that from the standpoint that we believe (inaudible) put the claim also in the bankruptcy court, and as to this $1.8 million, we believe those funds will be collectable at some point.

Q. Well, when is that some point?

A. I don't know. You would have to ask the trustee.

*        *        *

8

Q. Does Mr. Khan have $1.3 million available to pay the money?

A. I don't know. You would have to ask Mr. Khan.

Q. I'm asking you.

A. I don't know my client's finances, Mr. Mahendru. I don't get into that.

Q. You haven't asked your client why he breached the settlement agreement?

A. I know why the settlement agreement wasn't paid — wasn't paid, because there is an injunction in play in Harris County that prohibits him from paying anybody other than the trustee or (inaudible).

      \*            \*            \*

Q. All I asked was whether you asked him to pay the settlement agreement, not why.

A. Have I asked my client, who is prohibited by another court order, to pay a settlement agreement? Is that the question?

      \*            \*            \*

A. No.

      \*            \*            \*

Q. Who are your clients in this case?

A. We represent Mr. Samma, both Murtaza and the father. We represent Mr. Khan. We represent Reform Healthcare Management, Inc. We represent Shayan & Hiba Group, Inc., ACGI, Inc. And I think that's it.

Q. Okay. For all of those people, you've asked all of them to pay the settlement agreement, or you haven't even talked to them about it?

A. No, we have talked to several of them about it.

Q. All of them is my question. Have you talked to the Sammas, for example?

A. Yes, we have.

Q. And they have told you what?

A. They have no money to pay.

Q. Okay. So, the collection risk with respect to the Sammas is

9

extremely high, correct?

A. Again, other than what my client has told me, that's beyond me — beyond me. I —

Q. It's yes or no. It's extremely high if they don't have the money, right?

A. If that's what they represented to me, and that's truthful, that's correct.

According to the Sharmas, this excerpt constitutes uncontroverted testimony that the risk of non-collection under the eighth *Arthur Andersen* factor was "extremely high because (i) Appellees' company, Anantas[ai], had filed for bankruptcy; (ii) Appellees were under an injunction not to pay any money to any entity; and (iii) Appellees had no money available to pay a judgment."

Contrary to this contention, the record does not conclusively establish that the "risk of non-collection was extremely high." The bankruptcy of Anantasai, LLC — which the Sharmas did not sue for breach of the settlement agreement, and which is not a party to this appeal — does not mean that the Sharmas cannot collect their damages award from other appellees. Even assuming that at the time of the bench trial all appellees were enjoined from making any payments except to the bankruptcy trustee, this circumstance may establish a delay in collection but it does not establish a risk of non-collection.

The Sharmas elicited testimony that the Sammas "have no money to pay" the damages award; there is no evidence that Khan or the remaining appellees "had no money to pay the judgment." At best, the evidence shows that the Sammas personally had no money to pay the damages award and that payment of the damages award may be delayed. There is no evidence that the damages award would not be collectable from the appellees in this case, with the exclusion of the Sammas.

The Sharmas also contend that Ziek "never controverted or disputed the bases

10

on which Mr. Mahendru relied in testifying that $520,000 was a reasonable and necessary fee for the case." This contention is not supported by the evidence. The assertion that the risk of non-collection is "extremely high" and there is "no hope of ever recovering a dime from the appellees" is not conclusively established by uncontroverted evidence. Further, Ziek testified that in her opinion $520,000 is not reasonable and necessary in "this breach of contract." Ziek disputed Mahendru's testimony that a 40 percent contingency fee is reasonable and customary in this case.

Mahendru testified that this "plain vanilla breach of contract case" became complicated and required hiring a bankruptcy counsel to "help navigate the issues of how the settlement agreement would work if the funds were paid, if they weren't paid, what would the bankruptcy court's involvement be." Mahendru did not elaborate on how many hours the bankruptcy counsel actually spent on the breach claim or what the counsel's fee was. With regard to his firm's work, Mahendru testified that "the time and labor required was not simply the meetings before this court in regard to filing a breach of contract claim, moving for summary judgment on an underlying breach and then moving for summary judgment on the attorney's fees;" but Mahendru did not elaborate what other work was performed. He estimated that he worked 40-60 hours on the claim for breach of the settlement agreement, that attorney Braun worked 20-30 hours on the claim, and that paralegals worked 30-40 hours.

Ziek testified that her hourly rate is between $450 and $600, which is the same as Mahendru's hourly rate. Ziek testified that only the hours Mahendru attributed to his work on the Sharmas's claim can be considered because Mahendru failed to testify regarding the experience of Braun and the paralegals in his firm and only testified regarding his experience and the work he performed in this case. Ziek also disputed that Mahendru's estimated 40 to 60 hours were reasonable and necessary

11

in this case; Ziek testified, "I believe the hours he's claiming he worked to be high."

Additionally, Ziek testified that she reviewed Mahendru's firm's billing invoices for work his firm performed starting May 9, 2016 — the date Mahendru testified his firm started work. According to Ziek's review of the invoices, the time Mahendru's firm spent working on the claim "[f]or everybody involved, it would have been less than ten hours." And Ziek testified that, even assuming for argument's sake that the claim was more complicated and that Mahendru worked 40 to 60 hours at a $600 hourly rate in this case, a reasonable and necessary fee would be at most $36,000.

At a minimum, the record before us contains conflicting evidence as to *Arthur Andersen* factors one, three, and eight; the evidence is not "overwhelming and uncontroverted." The trial court as the factfinder determines the reasonableness of attorney's fees. *See Smith*, 296 S.W.3d at 547. The factfinder may believe one witness and disbelieve others, and it may resolve inconsistencies in the testimony of any witness. *Preston Reserve, L.L.C. v. Compass Bank*, 373 S.W.3d 652, 658 (Tex. App.—Houston [14th Dist.] 2012, no pet.). We reject the contention that the Sharmas are entitled to a $520,000 attorney's fees award because their "counsel provided overwhelming and uncontroverted testimony that attorney's fees of $520,000—an amount equal to the contingency fee that the Sharmas are required to pay to their counsel—were reasonable and necessary due to the specific circumstances of the case."

## B. No Competent Evidence

We next consider the argument that "Appellees offered no competent evidence that (i) $520,000 was an unreasonable or unnecessary fee; or (ii) that a different, lower amount of attorney's fees was reasonable and necessary." In support of their contention, the Sharmas make three arguments.

12

First, they contend appellees had the burden of submitting competent evidence to show that (1) $520,000 was an unreasonable fee; or (2) some other lower amount was reasonable. According to the Sharmas, appellees failed to meet this burden because Ziek's testimony constituted no evidence due to Ziek's "reli[ance] on a false and made-up 'legal standard' for the recovery of attorney's fees." They point to the following testimony from Ziek on direct examination.

In opining about what a reasonable and necessary fee would be in a case like this one, Ziek stated that a prevailing party may not shift a contingency fee to the losing party just because the prevailing party has a contingency fee agreement. Ziek stated that, "in essence, you have to put on testimony that the time that you spent at your hourly rate either comes close or exceeds what you would have gotten in your contingency fee. For an instance, we had a case not too long ago where that occurred, and we had to put on the number of hours. We couldn't just put on a contingency fee agreement. As a result, the jury awarded something other than the contingency. So, it can occur that you have a contingency fee, and the fact finder can find something other than that as being reasonable and necessary."

But on cross-examination, Ziek clarified her testimony and stated that she did not mean to testify that, in order for the trial court to award the Sharmas attorney's fees in this case, the "hours [their counsel] spent must equal or be close to the contingency fee calculation." Ziek stated: "What I meant was, when you're going through, you have to keep a log of the hours you spent so that you can testify to the jury or to the judge how many hours was spent on this. Normally, the judge or the jury are the fact finders. I've seen it both ways. I've seen it where more hours were spent and higher than a contingency fee was awarded. I've also been in a situation where I had a contingency fee, and they awarded a lower amount."

The Sharmas fail to acknowledge Ziek's testimony on cross-examination.

13

They also fail to acknowledge that Ziek's testimony regarding the reasonableness and necessity of attorney's fees in this case, when viewed in context and in its entirety, does not support the contention that the "testimony is a gross misstatement of Texas law." The record does not support the assertion that Ziek's testimony constitutes no competent evidence of the reasonableness and necessity of attorney's fees in this case because "Ziek relied on a false and made-up 'legal standard' for the recovery of attorney's fees."

Second, they argue that "Ziek also ignored the legal standard for recovering attorney's fees on an hourly, or lodestar, basis" by improperly relying on "guesses and assumptions about how many hours Mr. Mahendru's firm spent on the case, instead of on billing statements, in order to determine the ceiling for a reasonable fee." They argue that Ziek assumed the number of hours Mahendru worked on their claim, multiplied the hours by Mahendru's hourly rate of $600, and concluded that $36,000 was a reasonable and necessary fee in this case. According to the Sharmas, "Ziek's testimony constituted 'no evidence' that $36,000 was a reasonable and necessary amount of the Sharmas' attorney's fees on a lodestar basis" because the Sharmas introduced no billing statements into evidence.

Contrary to this contention, Ziek did not "attempt to controvert Mr. Mahendru's testimony by estimating the amount of Mr. Mahendru's fees on a lodestar basis" or improperly relied on "guesses and assumptions" about hours spent in this case. Nothing in the record shows that Ziek opined about the reasonableness and necessity of attorney's fees on a lodestar basis.

After Mahendru testified that he worked 40 to 60 hours on the claim, Ziek opined that the hours Mahendru claimed he worked are "high." Ziek opined that, even assuming that Mahendru worked 60 hours at an hourly rate of $600 for a total of $36,000, this amount "would be a reasonable and necessary fee" in this case for

14

Mahendru. Ziek pointed out that a plaintiff may not shift a contingency fee to "a set of defendants just because you have a contingency fee." Ziek opined that a plaintiff may not simply introduce a contingency fee agreement to recover attorney's fees but must present testimony regarding the hours spent in a case. Ziek testified that the trial court awards attorney's fees based on evidence of the *Arthur Andersen* factors.

Based on the record before us, we conclude that Ziek did not opine about the reasonableness and necessity of attorney's fees on a lodestar basis; nor did she rely on "guesses and assumptions" about how many hours were spent on the claim when opining on the reasonableness and necessity of attorney's fees in this case.

Third, they assert that Ziek's testimony constitutes no competent evidence because "Ziek only opined as to a reasonable and necessary fee 'in the collection of a simple breach of contract claim,' and did not specifically link her opinion to the Sharmas' lawsuit against Appellees."

The record shows that Ziek testified regarding the amount of reasonable and necessary fees for the claim for breach of the settlement agreement and that Ziek did not "tie[] her testimony to a hypothetical, 'simple' breach of contract case." Ziek was asked numerous times to opine as to reasonable and necessary attorney's fees in this particular case, which is evidenced by questions that were prefaced by words like "this breach of contract that occurred in May," "in a case like this," and "in this case." Especially when viewed in context, it is evident that Ziek's testimony related to what constituted a reasonable and necessary fee for the claim in this case.

Thus, we reject the assertion that Ziek's testimony is not competent evidence because the testimony was not "specifically tailored to the instant case" but was tied to a hypothetical breach of contract case.

15

## C.    Misapplication of Law

We now turn to the argument that the trial court misapplied the law when it "expressly ignored *Arthur Andersen* and substituted its own view of what is or is not a reasonable fee." The Sharmas contend that their counsel Mahendru "emphasized that $520,000 was a reasonable and necessary fee mainly based on factor no. 8 of the *Arthur Andersen* test—the uncertainty of collection," but the trial court "flatly rejected *Arthur Andersen*'s holding that reasonableness could be based on 'the uncertainty of collection.'"

Contrary to this contention, the trial court did not ignore or reject *Arthur Andersen*. The trial court did not "flatly reject[]" that the uncertainty of collection can be considered in determining the reasonableness of attorney's fees. Nor did the trial court state that it considers "only the amount of hours that the Sharmas' counsel spent litigating the breach of contract claim" in determining the reasonableness of attorney's fees.

At the conclusion of the bench trial, the trial court stated that it did not believe $520,000 is a reasonable fee for the work performed on the claim from May 9, 2016, to the day of trial on November 18, 2016. When the trial court asked Mahendru for "a proposed order including amounts of all the hours spent since May 9th forward, with all the people that were involved in this work," Mahendru accused the trial court of intending to award attorney's fees based upon the lodestar method and not considering the eighth *Arthur Andersen* factor relating to "the risks associated with collecting."

In response, the trial court explained that it has to "look at the reasonableness of the time spent." The trial court explained that it is "just using [the number of hours spent on the claim] as a guideline to figure out what is reasonable," and that "the nature, length and time, and the amount of time spent" on a claim is just one

16

factor for the court to consider. The trial court also assured Mahendru that it heard his testimony and argument regarding all the *Arthur Andersen* factors. With respect to the argument regarding the risk of non-collection, which Mahendru especially emphasized, the trial court reminded Mahendru that this was "just one factor, as you stated, but the underlying — the overlying thing is it has to be reasonable."

Here, the trial court followed the supreme court's instruction in *Arthur Andersen* that a factfinder "must decide the question of attorney's fees specifically in light of the work performed in the very case for which the fee is sought," and must consider the nonexclusive factors in determining the reasonableness of attorney's fees. *See Arthur Andersen*, 945 S.W.2d at 818-19. Based on the record before us, we reject the contention that the trial court misapplied the law and "expressly ignored *Arthur Andersen*."

Additionally, the trial court heard controverted evidence regarding the reasonableness and necessity of attorney's fees as we have discussed above. The trial court as the factfinder could have believed one witness and disbelieved another, and it was entitled to resolve inconsistencies in the testimony of any witness. *See Preston Reserve, L.L.C.*, 373 S.W.3d at 658. The trial court also was entitled to examine the "entire record and 'to view the matter in light of the amount in controversy, the nature of the case, and his or her personal experience as a lawyer and judge.'" *Land*, 2018 WL 3468923, at *10. Even if the evidence in this case had been uncontroverted, "the trial court is not bound by even uncontroverted attorneys' fees evidence and may award less than requested." *Hall v. Hubco, Inc.*, 292 S.W.3d 22, 33 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (finding no abuse of discretion when the trial court did not award the amount of attorney's fees the parties stipulated as reasonable and necessary); *see also Cole Chem. & Distrib., Inc.*, 228 S.W.3d at 689-90 (finding no abuse of discretion when the trial court awarded less

17

attorney's fees than the range testified to by both parties' experts and rejecting argument that "the trial court was bound by the scope of the expert testimony"); *Nat'l Mar-Kit, Inc. v. Forrest*, 687 S.W.2d 457, 460 (Tex. App.—Houston [14th Dist.] 1985, no writ) (stating that "[a] court is not mandated to award attorney's fees equal to those testified to at trial," even when that testimony is uncontroverted).

Accordingly, we conclude that (1) there is not "overwhelming and uncontroverted" evidence that an attorney's fees award in the amount of $520,000 for the Sharmas's breach of the settlement agreement claim is reasonable and necessary; and (2) the trial court did not misapply the law in its determination of the reasonableness of attorney's fees. The Sharmas have not established that they are entitled to a $520,000 attorney's fees award, and that the trial court abused its discretion in not awarding them the amount of attorney's fees they requested.

We overrule the Sharmas's issue.

## CONCLUSION

We affirm the trial court's judgment.


/s/ William J. Boyce
   Justice



Panel consist of Justices Boyce, Jamison and Brown.